J. L. RUSSELL *et al. v.* DAYTON COAL & IRON CO.

(*Knoxville.* September Term, 1902.)

**1. MINES. Failure to ventilate—Negligence.**

The Act of 1881, chapter 170, makes it the positive duty of a mine owner or operator to properly ventilate his mine and prescribes the amount of pure air that must be furnished to dilute, render harmless and expel the noxious, poisonous gases so as to render the mine safe to work in, and a failure to furnish the amount of pure air prescribed by said statute thereby causing an explosion is such negligence as renders the mine owner liable in damages for injuries resulting from said explosion. (*Post, pp.* 51, 53, 55.)

**2. MASTER AND SERVANT. Fellow servant—Concurrent negligence of.**

Where the negligence of the master (mine owner) in failing to comply with the requirements of the statute with respect to the ventilation of his mine concurs with the negligence of a fellow servant in going into a designated gaseous chamber with an open lamp, in producing an explosion resulting in the death of another servant who is without negligence, the master is liable in damages therefor. (*Post, pp.* 48, 49, 53-55.)

Case cited and approved: Railroad *v.* Kenley, 92 Tenn., 207, 218.

**3. RELEASE. Will be set aside for inadequate consideration, when**

Where there is a meritorious cause of action growing out of an explosion causing the death of a miner between forty and forty-five years of age in good health, and a strong hard working man, and the claim or cause of action therefor had been released or compromised by an ignorant, inexperienced administrator, without knowledge of the rights of his intestate in the matters involved, *for the sum of $125.00,* such

release will be set aside because founded upon a shockingly inadequate consideration.    (*Post, pp.* 45, 49-50, 55.)

**4.  LACHES.  Facts showing complainants not guilty of.**

M. was killed by an explosion in defendant coal company's mine in December, 1895; he left surviving him two minor children, who instituted an action in the  federal court against defendant to recover for the alleged wrongful death of their father, and to set aside an alleged fraudulent release made by one D. as administrator of M. for $125.00; this suit pended in said court until September, 1900, when that court held that, under its practice, it was without power to inquire into the validity of the release and compromise made by the administrator and directed that said cause be retained upon the docket  of that court until a bill could be filed in the State court to test the validity of said release; thereupon this cause was instituted on November 1, 1900, by bill filed in the chancery court to set aside said release and among other defenses interposed by defendant coal company was that of *laches:*

HELD,    That complainants had not been guilty of such laches as would bar their right of relief.  (*Post, pp.* 45-55.)

FROM RHEA.

Appeal from Chancery Court of Rhea County.  T. M. McCONNELL, Chancellor.

LUCKY, SANFORD & FOWLER, for Russell *et al.*

BURKETT, MANSFIELD & MILLER, for Dayton Coal & Iron Company.

MR. JUSTICE WILKES delivered the opinion of the Court.

Joseph Miller was killed December 20, 1895, by an explosion in one of the defendant's mines near Dayton, Tenn. He left no widow, but two children, Lillie and John Miller, both minors. These children, by next friend, brought an action in the federal court at Knoxville for damages for the death of their father. To the declaration filed in that suit the company pleaded the general issue, illegitimacy of the plaintiffs, and that the cause of action had been compromised with Wm. Dryman, as administrator of Joseph Miller, for the sum of $125. The validity of this compromise and its binding force were put in issue by appropriate pleadings, and, the cause having pended in said court until September, 1900, that court held that, however unjust and fraudulent the compromise might be, it was not in its power, under its practice, to inquire into its validity; and the judge of that court directed that the cause be continued from term to term upon the docket of that court until a bill could be filed in the State court, and the validity of the compromise there tested. Complainants thereupon filed this bill for that purpose on the 1st of November, 1900; complainant Lillie having married J. L. Russell in the meantime. The defendant filed a demurrer to the bill, stating as grounds that only fraud and collusion could be inquired into, and all other matters in the bill were immaterial and improper; that complainants had not confessed or offered to confess

judgment as to such other matters; that, as to the compromise, fraud and collusion could not be inquired into, because complainants had excepted to the order of the federal court remitting them to the State court, and were still contesting the propriety of the same. The chancellor overruled this demurrer, and held that he could determine the legality of the appointment of the administrator, his power to make the compromise, and any and all facts tending to show the same unauthorized and invalid. The defendant then answered, and denied all material allegations of the bill, and set up that the former action was still pending in the federal court, and the question of liability was in issue therein; set up also the report of the State Mine Inspector, exonerating it from blame; relied upon the laches of complainants and the statute of limitations of one year; and denied all fraud and collusion. On final hearing the chancellor held that the compromise was not obtained by fraud or collusion, and was valid, and that complainants were entitled to no relief, and dismissed the bill at their cost. The $125 compromise money had been paid into court, and it was directed that the costs be paid out of this, and the balance be paid complainants. Complainants prayed and were granted a broad appeal, and both sides assigned errors in the court of chancery appeals. The defendant assigned as errors failure to sustain the demurrer, failure to sustain the defense of laches, failure to sus-

tain the plea of the statute of limitations, and the rejection as evidence of the report of the State mine commissioner pertaining to the explosion.

The complainants assigned as errors failure to find that the compromise was obtained by fraud and collusion, and holding the same valid, and denying the complainants the relief sought. It was claimed that the compromise by Dryman, administrator, was void, because made when no action was pending, and the power to compromise rested in the complainants, as children, alone, and they, being at the time minors, could not themselves compromise, nor could any one for them, without the aid of a competent court; that, with the compromise out of the way, complainants had a meritorious cause of action; that, having a meritorious case, the compromise was void because the amount was grossly inadequate; that it was made without intelligence, knowledge of facts, or consideration of complainants' rights; that the defendant suppressed the truth, and the parties did not stand upon an equal footing. The court of chancery appeals held that the consideration and investigation of the questions of fraud and collusion, and matters connected therewith, were alone before that court, and the bill should be treated only as in aid of the suit at law. The court held that the defense of laches was not well made; that complainants had been actively prosecuting their rights all the while, both in

J. L. Russell *et al.* v. Dayton Coal & Iron Co.

the Federal and State courts, and that, while the complainants had not* been negligent, the defendants had suffered no prejudice by the delay. The defense of the statute of limitations was held not good, since this action is not for the injury done, but merely a suit in aid of the action at law, and to remove a defense interposed by defendant which complainants allege is fraudulent. The court held that it was not error to exclude the report and opinion of the commissioner of mines as evidence, as it was not part of his duty to report the particulars of any accident, or pass judgment thereon. Upon the complainants' assignments the court of chancery appeals held that the power of the administrator to make the compromise was not properly embraced in the bill, but that its proper scope was to inquire into the alleged fraud and collusion in obtaining it. The court of chancery appeals then goes into a minute and exhaustive consideration as to whether the complainants had a good cause of action against defendant, in which that court reviews the facts of the accident, and the law bearing upon the liability of the mining company, and the general duties incumbent on the company; and that court sums up its conclusion as follows: "The facts found show a violation of section 7 of the Act of 1881 by the master, but they also show that but for the concurring negli-

---

*The use of this word "not" is probably a clerical error, as the context indicates that its use was not intended.

gence of Williams, a fellow servant, in going across the warning sign, there would probably have been no accident.    There was also the concurring negligence of Umbarger, the night inspector, in not promptly notifying Holden, the day inspector, of the presence of gas in rooms 1, 2, and 16, so that they might be cleaned out."    That court adds, "But where there is thus a case of concurring negligence of the master and fellow servant of the injured party, the latter may recover against the master, and the fellow-servant doctrine does not control such a case," (citing 12 Am. & Eng. Enc. Law [2d Ed.], 905, and cases cited; also *Railroad* v. *Kenley,* 92 Tenn., 207-218; 21 S. W., 326), and it was not, therefore, necessary to consider the authorities to the effect that the master is not liable for the negligence of the mine boss selected pursuant to an act of the legislature, where it is shown that such mine boss is a competent person.    That court further reports that Joseph Miller, when killed, was 40 to 45 years of age, in good health, and a strong, hard-working man, and that damages for the negligent killing of such a man should not be less than $2,000, and a compromise for $125 was shockingly inadequate, and should be set aside; but there was no other evidence of fraud, except the shockingly inadequate amount; that the administrator was ignorant, inexperienced, and had no knowledge of the rights of his intestate's estate in the matters involved; that his counsel was young and in-

experienced. That court therefore reversed the decree of the chancellor, and set aside the compromise, and taxed defendant with all costs, and the defendant has appealed.

For defendant it is said in this court that the court of chancery appeals was in error in holding that complainants' case was meritorious; that, on the contrary, it was speculative, and hence the compromise was not fraudulent; that the court was in error in holding that the accident was caused by a violation of section 7 of the Act of 1881 by defendant, and the concurring negligence of Williams, a fellow servant of deceased, in crossing the danger mark placed by Umbarger, the night inspector, and that Joseph Miller was free from negligence, but the court should have held that Miller's death was caused principally by his violation of section 8 of said act, in that he entered the mine before it was reported to him to be free from danger; further, that the court was in error in construing the acts of Umbarger as negligent, and also in visiting the punishment for his acts upon the coal company, because he performed his duty in the ordinary way, and, second, that, if Umbarger violated any duty, it was not one which the defendant owed deceased, and in which Umbarger occupied the position of a vice principal, but it was one personal to Umbarger as assistant inside overseer—in other words, it was a personal, statutory duty imposed on him as inspector by the statute,

J. L. Russell *et al.* v. Dayton Coal & Iron Co.

and not resting on him as representing the employer.

In order to understand these assignments and the finding of the court of chancery appeals, it is necessary to state that section 7 of the Acts of 1881 provides in detail for the ventilation of mines by their owners, and prescribes the quantity of pure air that must be furnished to dilute, render harmless, and expel the noxious, poisonous gases, so as to render the mine safe to work in, and provides, also, the sizes and dimensions of the take-in and return airway for ventilating purposes.  This is all, without doubt, the duty of the mine owner or operator.  Section 8 provides that the owner shall provide a competent and practical inside overseer or mining boss to keep watch over the ventilating apparatus and the general condition of the mine, as to its safety; that he shall examine the workings of all mines generating explosive gases every morning before the miners enter the mine, and the workman shall not enter the mine until such examination shall have been made and reported on, and all danger removed, and every evening the mine inspector should see that the doors of the passageways are all properly closed, and the airways free and unobstructed to the passage of air; and various other duties are imposed by the statute.

The court of chancery appeals report that Mr. Umbarger, the night inspector, discov-

ered gas in rooms 1, 2 and 16, and that he chalked
No. 2 with the word "Gas," as a danger signal, and
put up other signals at its entrance.  He also put
up danger signals at No. 1 and No. 16.  Rooms 1
and 2 adjoined, and No. 16 is some distance away.
The examination was made about 5 o'clock in the
morning, and the explosion occurred at 7:30.  Mr.
Umbarger did not clear out the gas, but left that
for Mr. Holden, the day inspector, to do.  It was
the duty of Mr. Holden to enter the mine before or
along with the men, and clear out the gas in the
rooms found marked, but on this morning he did not
do so.  He had only entered about 200 feet into the
mine when the explosion occurred.

It was Umbarger's duty to enter his report upon
a book on the outside of the mine.  He did not do
this, but merely reported to the day man, Holden,
the fact that there was gas in No. 2.  This was only
a few minutes before the explosion, and just in time
for Holden to go the 200 or 300 feet.  Where Um-
barger was from 5 to 7:30 o'clock does not appear.
The miners were not informed that morning, before
entering, that there was gas in the mine, and they
knew nothing of its presence until they saw the dan-
ger signals at the rooms.  It was their duty to
avoid these rooms and localities when they saw these
signals.  It appears, however, that Mr. Williams, a
fellow servant, entered room No. 2 with an open
lamp, which ignited the gas in that room.  This

caused a dust explosion, which extended to No. 3, and down through No. 2 to entry K, when there was another explosion, and this was augmented by the gas in No. 1, and then a series of explosions occurred eastward along entry K, and southeastwardly into district No. 9, where a man and mule were found killed after the explosion.

Umbarger's course in leaving to the day inspector the duty of cleaning out this gas was proper, and it would have been safe for the miners to go elsewhere to work. The court of chancery appeals report that, if Williams had not gone over the warning notices, there would have been no explosion. The court, after detailing the evidential facts, reports further that the company did not supply an adequate amount of ventilation, as required by section 7 of the Act of 1881; that the necessary or required amount of air was not furnished, nor was it driven up to the wall while the work was progressing. That court reports that the mine boss and his assistants were experienced, competent and practical men, and well fitted for their work; that there were three inspections daily of the mine, while the law only required one. It is upon these facts, detailed with great elaboration, that the court of chancery appeal summarizes their finding that the master violated section 7 of the Act of 1881, in not properly ventilating the mine, but that the accident would not have happened but for the concurrent negligence of Williams in not

heeding the danger signals, and that there was also the concurrent negligence of Umbarger, the night inspector, in delaying from 5 to 7:30 to notify Holden, the day inspector, of the presence of gas in Nos. 1, 2 and 16, so that they might be cleaned out. It was thus the accident was caused by the concurrent negligence of the master and fellow servant, in which case the master is liable, under the authorities. *Railroad* v. *Kenley*, 92 Tenn., 207-218 (21 S. W., 326); 12 Am. & Eng. Enc. Law (2d Ed.), 905. The court finds in express terms that Miller was without negligence at the time he was killed. It is altogether probable, from the place his body was found, that he did not see the danger signs.

As we understand the holding of the court of chancery appeals, it is that whether the company, in view of the statute, would be liable for the negligence of Umbarger, the night inspector, is immaterial, and is really pretermitted by the court, inasmuch as a proper ventilation of the mine nevertheless devolved on the owners, and their failure to have the proper ventilation made the company liable, where it concurred with the negligence of Williams, a fellow servant, to cause the accident. In other words, if Umbarger had discharged his duty by promptly notifying Holden, the day man, of the presence of danger, still the company would be liable because of its failure to properly ventilate, coupled with the negligence of Williams, the fellow

servant, in overstepping the line of safety, disregarding the danger signal. Hence the court of chancery appeals holds that it need not pass on the question whether the master would be liable for the negligence of the mine boss under the Act of 1881, on the ground that he is provided for and his duties prescribed by the statute. The finding of the court of chancery appeals, in substance, is that the mine was not properly ventilated; that the requisite amount of pure air was not furnished, and that it was not furnished as the work progressed; and that the mine was in such unsafe condition as would make it susceptible to an explosion, which was precipitated by the concurrent negligence of Williams, the fellow servant.

Upon the whole case, which has been so thoroughly considered by the court of chancery appeals, and so fully set out in its opinion, we are content to affirm the holding of that court that there is ground of liability, and complainants have a meritorious case; that the compromise amount was wholly inadequate, and the compromise should be set aside; that no negligence appears on the part of the deceased which should bar his recovery; and that complainants have not been guilty of laches. Other assignments we consider immaterial, and the decree of the court of chancery appeals is affirmed.