[Civ. No. 2601.   Fourth Appellate District.—February 20, 1941.]

DONALD  A.  MAXON,  as  Administrator,  etc.,  Appellant,
v. ROSE  V.  AVERY,  Respondent.

W. R. Bailey, Walter C. Haight and John F. Downey for Appellant.

Farnsworth, Burke & Maddox and James K. Abercrombie for Respondent.

BARNARD, P. J.—This is an action to set aside a joint tenancy with the right of survivorship, and quiet the plaintiff's title in and to certain money and a certain note and trust deed.

On or about June 2, 1936, Norton H. Tharp, who was then 76 years of age, sold a ranch, which was his separate property for $13,500, receiving $3,500 in cash and a note for $10,000 secured by a trust deed upon the property. The note and trust deed were made out in favor of Tharp, his wife, and Rose V. Avery, who was a niece of his wife, as joint tenants with the right of survivorship, and the cash received was deposited in a bank under a similar arrangement. The couple had no children, and Tharp's wife died on November 15, 1936. On January 11, 1937, Tharp was adjudged incompetent and Donald A. Maxon was appointed as guardian of his person and estate.

The guardian brought this action alleging that on June 2, 1936, Tharp was weak in body and mind and unable to care for his property; that the defendant occupied a confidential relationship with him; that without his knowledge or understanding and in violation of that relationship she had procured the placing of the proceeds of this ranch in such joint tenancy; and that the creation of this joint tenancy was procured by fraud and undue influence.

The court found in all respects in favor of the defendant, but findings and judgment were entered after Tharp had died. On a former appeal (*Maxon* v. *Avery*, 32 Cal. App. (2d) 300 [89 Pac. (2d) 684]), taken on the grounds that the findings were not supported by the evidence and that the judgment was void, having been entered before the administrator of Tharp's estate was substituted as the party plaintiff, this court reversed the judgment on the latter ground and with respect to the first ground, said: "Conceding, but not holding, that the evidence would have supported contrary findings and a judgment in favor of the appellant, it would have to be held that the findings and judgment as entered

are amply supported by the evidence. In fact, they are supported by a preponderance of the evidence.''

On a rehearing, after vacating the former findings and judgment, the court again entered substantially the same findings of fact finding, among other things, that it was not true that at the time in question Tharp ''was weak in mind, or was unable unassisted, to care for himself or his property'' except that he was, on account of age, unable to perform the physical labor of caring for his real property; that he personally conducted the negotiations for the sale of this property; that at all times during said transaction he was mentally competent; that he freely discussed the details of this transaction, the disposition to be made of the moneys to be received therefrom and the terms of the trust deed and note, not only with his wife but also with other competent disinterested persons who gave him independent advice particularly as to the disposition to be made of said moneys and the payees to be named in said note and trust deed; that after full consideration and discussion and with full knowledge and understanding and of his own free will Tharp consummated said sale and made the disposition in question of the proceeds thereof; that it was not true that the defendant occupied a confidential relationship with Tharp; that it was not true that she caused or procured the making of the joint tenancy with respect to the proceeds of the sale; and that there was no fraud or undue influence. Another judgment was entered, from which the plaintiff has appealed upon a clerk's transcript covering the proceedings after the going down of the *remittitur* on the other appeal and with a stipulation that the reporter's transcript filed in connection with the other appeal should be used and considered on this appeal.

No contention is now made that the evidence is not sufficient to sustain the findings and judgment. The appellant admits that the sale of the farm was fair and just and for an ample consideration, but contends that the court made four errors in connection with the receipt of evidence which were prejudicial and without which it would have been established that at the time in question Tharp ''was of such unsound mind as not to fully comprehend the transaction.''

The test to be applied in such a case as this is whether the party was mentally competent to deal with the subject before him with a full understanding of his rights; whether

he actually understood the nature, purpose and effect of what he did. (*Carr* v. *Sacramento C. P. Co.*, 35 Cal. App. 439 [170 Pac. 446].) In *Hellman Commercial T. & S. Bk.* v. *Alden*, 206 Cal. 592 [275 Pac. 794], the court said: "One may be incompetent to some extent and yet have sufficient mentality to comprehend the nature and effect of a transaction and therefore execute a valid contract."

Appellant's first two assignments of error relate to two questions asked of the lady who bought this farm from Mr. Tharp. The first question was "I will ask you to state, based on your observation and your talk and your dealings with him, during this period of months, whether or not in your opinion he was of unsound mind?" The second was, "State whether or not, in your opinion, Mr. Tharp, during these negotiations, as you saw and observed him, was capable of transacting business as to his property?" Objections to both questions were overruled and the answer to each was unfavorable to the appellant. It is argued that this witness was not qualified to express an opinion on such matters since she was not an intimate acquaintance, within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure. Reliance is placed upon the case of *The Atkins Corporation* v. *Tourny*, 6 Cal. (2d) 206 [57 Pac. (2d) 480]. In that case the witness had known the party in question a week and had had five conversations with her. The court held that it was error to allow the witness to give his opinion concerning the sanity of the party but found it unnecessary to decide whether that error, standing alone, would justify a reversal.

In the instant case, this witness had had four interviews with Tharp over a period of nearly two months. Some of these interviews lasted several hours during which Mr. Tharp showed her the boundaries of his property, showed her a number of things about it, including the location of several springs, and told her about his riparian rights.

No definite rule has been established as to just what is required to constitute one an intimate acquaintance of another. This witness had considerable opportunity to observe Tharp and his actions and words in connection with the actual handling of his property. It is conceded that he made a good sale of the property and there is no evidence that the respondent influenced him or attempted to influence him in

connection with the sale or with the disposition of the proceeds thereof. It may be noted that these questions were directed more to the appearance of Tharp, under a particular set of circumstances, rather than to a general opinion as to his mental condition. ■ The testimony thus brought out was in fact unnecessary and merely cumulative because the testimony of this witness, as to what was said and done by Tharp during this period, led naturally to the same conclusion and was most persuasive. Whether or not the admission of this testimony was technically erroneous it cannot be held, under the circumstances of this case, to have been sufficiently prejudicial to justify a reversal. (*De Arellanes* v. *Arellanes*, 151 Cal. 443 [90 Pac. 1059].)

The same may be said with respect to the third assignment of error, which relates to a similar question asked of a bank official who acted as escrow agent in connection with the sale of this farm.

■ In the remaining instance it is claimed that the court erred in striking out that part of the testimony of one witness in which he testified that during a conversation between Tharp and himself, Tharp's wife made a motion "around the head" and in which, in response to the question "She made a motion with her hand going around her head?", the witness replied, "Yes, I guess, I don't know that is what he mean." He first testified that Tharp did not see his wife make this motion, and later testified that he did see it. It is argued that such a motion is commonly understood as indicating that the person to whom it refers is "out of his head" and that this testimony was admissible because Mr. Tharp said nothing, although he saw his wife make the motion. Aside from any other consideration, this incident occurred three years prior to the transaction in question. If we assume this evidence had a bearing on the issues, there was no jury, there was a great deal of other evidence on that issue, and it can hardly be presumed that the court would have accorded it any greater weight had it been admitted.

While there was evidence that Tharp's mental condition rapidly deteriorated after his wife's death and while there is some evidence that might be said to be technically sufficient to have supported a finding that he was not in full

possession of his faculties at the time of this transaction, a rereading of the transcript convinces us that the evidence largely preponderates in favor of the findings as made. This conclusion is supported not only by the direct evidence indicating that Tharp fully understood what he was doing in this transaction, but by the nature of the appellant's evidence given in an attempt to prove the contrary. While some of these witnesses expressed the opinion that Tharp was then of unsound mind the reasons given for such opinions were so unsubstantial, in most cases so clearly inadequate, and in many cases so trivial, it can well be seen why the trier of fact refused to give any weight thereto. As examples, one of these witnesses stated, as reasons for his opinion, that Tharp frequently had trouble in starting his 12-year-old Star automobile, and that he was asking $25 an acre for his land when the witness thought it was worth not more than $2.50 an acre. It may be here observed that in this transaction Tharp sold the land for $20.45 per acre. Another witness thought he was of unsound mind because he was somewhat forgetful at times, and because he expressed an intention or desire of going different places at different times. One of Tharp's nephews drew the same conclusion because Tharp got angry on two occasions when the witness' cattle trespassed upon Tharp's land. And the appellant administrator, the husband of Tharp's niece, testified that Tharp was not mentally competent to transact business at the time in question, although when asked whether he had had any occasion to observe Tharp's ability to conduct business transactions during the spring and summer of 1936, he replied: ''No, other than he could not start his car, and such as that''.

No undue influence or fraud appears, and the manner in which the proceeds of this sale were disposed of were not unnatural or unreasonable since the evidence shows that Tharp was very fond of his wife's niece, the respondent, that he resented his nephews' allowing their cattle to trespass upon his property and had had other controversies with them, and that he had expressed the desire that his sister's family receive none of his property. Under the circumstances here appearing it cannot be assumed that a different ruling, with respect to any of these items of evidence, would have affected the result, and any possible error was not prejudicial.

(*Cooper* v. *McDonald*, 32 Cal. App. (2d) 114 [89 Pac. (2d) 412].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1941.