[Civ. No. 16551. First Dist., Div. Two. Mar. 13, 1956.]

G. E. STRATTON, Plaintiff, v. EUGENE S. GRANT et al., Appellants; ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO, as Guardian, etc., Respondent.

William E. Barden, Paul M. Hupf and Robert J. Smith for Appellants.

Douglas M. Moore, Samuel B. Stewart, Christopher B. Jenks and Arthur V. Toupin for Respondent.

DOOLING, J.—Cross-defendants Grant appeal from a judgment entered in favor of cross-complainant Anglo California National Bank of San Francisco (hereafter called Anglo) as guardian of the estate of Anna M. Snider. In a suit brought by one Stratton to quiet his title to the real property involved Anglo as guardian of Mrs. Snider filed a cross-complaint to rescind a deed to appellants Grant and another deed to the same property to plaintiff Stratton on the ground that when the deeds were executed Mrs. Snider was of unsound mind. The court entered judgment rescinding both deeds. Stratton has not appealed.

On January 17, 1953, Anna M. Snider entered into a written agreement for the sale of her home and the furniture in it to G. E. Stratton for the sum of $9,300, the agreement providing for a broker's commission of $450. On January 20, 1953, she signed a deed conveying this property to Stratton. This deed was acknowledged March 13, 1953, and was recorded

April 7, 1953. No part of the purchase price on this transaction was paid to Mrs. Snider.

On February 25, 1953, Mrs. Snider and Eugene Grant entered into an agreement for the sale of the same house to Grant. The purchase price was $7,000, exclusive of furniture and not subject to any commission. Mrs. Snider received the full purchase price and the deed covering this transaction was placed of record on March 4, 1953.

Anna M. Snider was declared an incompetent on April 21, 1953, and Anglo was appointed guardian of her estate.

About April 15, 1953, prior to its appointment as guardian, Anglo, on behalf of Anna M. Snider, notified the Grants in writing that the purported sale to them was rescinded and offered to return the $7,000 paid by them to Mrs. Snider. On April 21, 1953, subsequent to its appointment as guardian, Anglo was notified by the Grants of their refusal to reconvey the property to Mrs. Snider on payment to them of $7,000.

In addition to ordering the rescission of both the Stratton and Grant deeds the trial court further decreed that Anglo, as guardian, was entitled to a reconveyance of the property by the Bank of America upon payment to it of $5,603.39 plus interest (the amount due on a loan taken out by the Grants and secured by a deed of trust). The court also ordered that upon reconveyance of the property the guardian should pay to the Grants the sum of $571.61, less the reasonable rental value of the property at the rate of $75 per month until the reconveyance should be accomplished.

Appellants first argue that the evidence is insufficient to support the finding ". . . that on the 25th day of February, 1953, when she executed said agreement of sale and said deed to said Eugene S. Grant and Irma Grant, said Anna M. Snider was of unsound mind and she was not mentally competent to deal with the sale and conveyance of her said real property with a full understanding of her rights, and she did not actually understand the nature, purpose and effect of said agreement and said deed, and at said times she was mentally incompetent and was unable, unassisted, to properly manage her property, or to take care of herself or her property, and by reason thereof she was deceived and imposed upon by said Eugene S. Grant and Irma Grant." Respondent Anglo's cross-complaint seeking rescission was based on Civil Code, section 39, to the effect that: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially

determined, is subject to rescission, as provided in the chapter on rescission of this code.'' It has been established that in order to have relief under this provision it is not necessary that one be incompetent to enter into any kind of contract or to transact any business. Rather the test is whether or not the party was mentally competent to deal with the subject before him with a full understanding of his rights. Such a question is to be determined by the court or jury and if there is found in the evidence any rational ground supporting its determination its conclusion on this point will be upheld. (*Pomeroy* v. *Collins,* 198 Cal. 46, 69 [243 P. 657] ; *Carr* v. *Sacramento Clay Products Co.,* 35 Cal.App. 439 [170 P. 446].)

An examination of the evidence satisfies us of its sufficiency to support the finding that when Mrs. Snider executed the deed to the Grants she was not mentally competent to deal with the subject with a full understanding of her rights. The evidence shows that she had shortly before entered into a binding agreement to sell house and furnishings for $9,300 less a $450 commission and that pursuant to this agreement she had actually signed a deed to Stratton. The witness Chambers testified that the furnishings were worth ''a couple of hundred dollars'' and they were later sold for $200 by Anglo acting as guardian. Deducting these amounts from $9,300, on her contract with Stratton she would receive for the real property net to her $8,650. Stratton's real estate agent testified that the money was in his hands for payment to Mrs. Snider as soon as she vacated the home and that he so informed her. To her knowledge he had made considerable efforts to find for her another suitable place to live. In the face of these facts when she was negotiating the sale of her property to the Grants she told their agent, Pollach, that she had been offered $9,300 for her property orally, but that she had not signed anything and the listing had expired. On March 16, 1953, long after she had signed and delivered not only one, but two, deeds to her property, she told her physician that she was planning to sell her property to a man who lived in the neighborhood. Her physician testified that she was suffering from senile dementia and in his opinion on the date that she deeded her property to the Grants she was not competent to understand the transaction.

Appellants cite cases distinguishing medical unsoundness of mind from legal competency. Giving these their full weight the trial court could reasonably find from the above evidence

that on the date of the deed to the Grants Mrs. Snider was not competent to understand the effect of the transaction. With a firm sale from which she would receive $8,650 net for her real property as soon as she could arrange to deliver possession, with the contract with Stratton and the deed to him signed and in the hands of his agent she accepted $7,000, a net loss of $1,650, and told the agent that she had signed nothing and the listing had expired, and on March 16 after signing two deeds she still said to her doctor that she was planning to sell her property. Coupled with the expert opinion of her incompetency this evidence furnishes abundant support for the court's finding.

Appellants urge that there is no support for the finding that Mrs. Snider "was deceived and imposed upon" by them. This latter finding is not necessary to support the judgment. The finding of incompetency alone is sufficient to support the rescission and there need be no conscious overreaching. (*Neale* v. *Sterling*, 117 Cal.App. 507, 509 [4 P.2d 250] ; Civ. Code, § 39.)

The fact that the notice of rescission was given by Anglo before it was appointed guardian becomes unimportant because the Grants unequivocally refused to rescind after Anglo became guardian. The law does not require idle acts and after the Grants had flatly refused to rescind it would have been idle to give them a second notice of rescission and offer to restore the purchase price. The court said in *McDonald* v. *Pacific Debenture Co.*, 146 Cal. 667, 672 [80 P. 1090] :

"The defendant's conduct was, in effect, a positive refusal under any circumstances to return the money already received, and this positive refusal relieved the other parties from the necessity of offering to return or cancel the contract, prior to beginning the action."

The court found the reasonable rental value of the property to be $75 per month (it was in fact rented for $75 per month from September 1953). It allowed the appellants $571.61 with provision that $75 per month be deducted therefrom for every succeeding month that the Grants refuse to reconvey. This figure was arrived at by charging the Grants $75 per month rental from the time they took possession of the property and deducting this amount and the amount of the bank loan from the $7,000 paid by the Grants. Appellants complain that the $75 per month should not have been deducted because of the following testimony of Mr. Grant:

"THE COURT: The $75 comes in——

"THE WITNESS: That takes care of the electricity, whatever I have, taxes, insurance, liability and the loan on the bank."

Appellants urge that from this the court was compelled to find that all of this money was spent for the benefit of the property and to reduce the loan. They already received the benefit of the reduction of the loan, because the court used the figure to which the loan was reduced in its calculation. No supporting data or amounts of other expenditures was furnished and the court could disregard the testimony of other expenditures in the casual and cavalier way in which appellant Grant testified to them: "That takes care of etc." As so phrased this amounted to no more than the unsubstantiated conclusion and opinion of the witness.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.