[No. 7404. Decided July 11, 1908.]

CHRIS HOWLAND, *Respondent*, v. STANDARD MILLING & LOGGING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—EVIDENCE—SUFFICIENCY. It is negligence to remove one of the pulleys supporting a haul-back cable connected with a donkey engine used in hauling logs in the woods, thereby dropping the cable to the ground so that it caught on an obstruction, where it was known that it was the custom of the plaintiff, an employee attending the haul, to ride back on a sled pulled by the line, and that he would soon come within the zone of danger caused by taking away the support.

SAME—FELLOW SERVANTS—VICE PRINCIPALS—SAFE PLACE. In such case, the act of a co-laborer in taking away the support, by order of the foreman, is not the act of a fellow servant, but of a vice principal, since it was the master's duty to provide a safe place to work, and the foreman and co-laborer both represented the master in removing the block.

SAME—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE — EVIDENCE—SUFFICIENCY. In such a case the plaintiff's contributory neg-

[1]Reported in 96 Pac. 686.

ligence, and his assumption of risks, is for the jury, where he testified that he did not notice the changed conditions, and there is room for a reasonable difference of opinion.

SAME—ASSUMPTION OF RISKS. A laborer in a logging camp riding on the bite of the cable line in front of the tail block, which practice was dangerous from the fact that the tail block might give way, does not assume the risk from other dangers caused by reason of the negligent taking away of a support of the line, unknown to him, where his injury was not caused by the tail block.

SAME—CUSTOMARY METHODS. Where one is injured by the negligence of the master while pursuing his work in the customary way of doing the work, the accident not being the result of natural conditions, whether he ought to have adopted some other way is a question of fact for the jury and not of law for the court.

Appeal from an order of the superior court for King county, Frater, J., entered January 17, 1908, granting a new trial, after a judgment rendered by direction of the court in favor of the defendant, in an action for personal injuries sustained by an employee of a logging camp. Affirmed.

*Roberts & Hulbert*, for appellant.

*Blaine, Tucker & Hyland*, and *Robert C. Saunders*, for respondent.

FULLERTON, J.—The respondent was injured while working in the logging camp of the appellant, and brought this action to recover therefor, alleging that his injuries were caused by the negligence of the appellant. At the trial, which was being had before a jury, the court sustained a challenge to the sufficiency of the evidence, discharged the jury, and directed judgment to be entered in favor of the appellant to the effect that the respondent take nothing by his action. The respondent thereupon moved for a new trial, which motion the court, after taking the same under advisement, granted, reinstating the case for another trial by jury. From the order granting the new trial, this appeal is taken.

In its logging operations the appellant was using two donkey engines, one, the yard donkey, to drag the logs from

the place in the woods where they were felled to the main logging road or skidway, and the other, the road donkey, to drag them from the latter place to the milling plant of the appellant where they were cut into lumber. These donkeys were stationary and hauled the logs by means of steel cables long enough to extend from the engines to the location of the logs. The cable on the road engine was carried back by means of a second cable, called a haul-back line, smaller in size than the logging cable, which was passed through a series of pulleys fastened at intervals along the side of the logging road to a point somewhat beyond the logs desired to be hauled, where it passed through a pulley called a tail block and was then fastened to the end of the logging cable. As the logging cable was drawn in toward the road donkey, dragging its load of logs, the haul-back line was paid out, and was in turn hauled in when it was desired to haul the heavy cable back to the woods. It was the respondent's duty to hitch the logs to the heavy cable, follow them to the dumping place, release them from the cable, and then follow the cable back for another load of logs. The chains and hooks used in hitching the logs to the cable were carried back to the woods by means of a sled fastened to the cable and drawn back to the woods by the haul-back line. It was the respondent's custom to ride back on this sled. Just prior to the time of the accident, a co-laborer working with the yard donkey, acting under the direction of the appellant's foreman, without notice to the respondent and without his knowledge, removed one of the pulleys near the tail block, letting the haul-back line drop on the ground. In dropping, the line caught on a projecting root which held it in place while the main road line was being hauled back. It held in that position until the sled on which the respondent was riding reached a point near it, when it gave way allowing the line to swing against the respondent with such force as to break one of his legs at the ankle. It is this injury for which he sues.

The appellant contends, (1) that the evidence fails to show any negligence on the part of the appellant; (2) that if there was negligence of any person, it was the negligence of a fellow servant of the respondent; (3) that the danger was open and apparent, and the respondent assumed the risk, and was guilty of contributory negligence; (4) and that there were two or more ways for doing the work the respondent was required to do, only one of which was unsafe, and the respondent voluntarily chose the unsafe way.

As to the first objection, it would seem that some one was grossly negligent in the matters connected with the removal of the guide pulley. It may be that the mere taking away of the pulley was not negligence, but this act required a readjustment of the haul-back line between the remaining permanent fastenings, and it was negligence not to see to it that it readjusted itself naturally, and did not catch and hang onto temporary obstructions to readjust itself by the strain when some one got into the zone of danger. And especially was it negligence when it was known that the respondent was in the habit of working in the exposed places, and that his duties would, in the course of a short time, bring him therein. The danger to the respondent caused by the line catching on some obstacle which would give way when the strain increased, was one that ought to have been forseen and guarded against when the change in the pulley was made, and to fail to do so is negligence.

Nor do we think the act which rendered the place unsafe was the act of a fellow servant of the respondent. It is the fundamental duty of the master to make and keep safe the place in which he requires his servants to work, and this duty cannot be delegated so as to relieve the master from liability for a negligent performance of the duty. The facts of this case bring it within the rule. In the furtherance of the master's business, which was being conducted under the immediate direction of its foreman, the place wherein the respondent

was required to work was converted by order of the foreman from one reasonably safe to one highly dangerous. Both the foreman who ordered the block removed and the man who actually performed the work represented the master in this particular, and the master is responsible for their negligent acts.

The claim that the respondent assumed the risk and was guilty of contributory negligence were at best but questions of fact for the jury. The respondent testified that he did not notice the changed conditions until about the time the accident happened. Whether the change was so apparent that he ought to have observed it, is a question on which reasonable minds might reasonably differ, and its determination should have been left to the jury. It is argued, however, in this connection that the respondent cannot recover, because he voluntarily placed himself in a place dangerous even under normal conditions, in that he rode down into the bite of the line. By the bite of the line is meant the place between the lines immediately in front of the tail block, and is dangerous because the tail block may give way. It may be that had the respondent been injured by the giving way of the tail block he could not recover for his injuries, on the ground that he had assumed the risk. But it is not the rule that a servant who goes into a dangerous situation assumes the risk of all dangers surrounding the place. He assumes those dangers only which are inherent in and which exist from the nature of business—those dangers against which there is no absolute protection, not those caused by some negligent act of the master and which would not exist but for such negligent act. The master is not relieved from liability for negligent acts which would otherwise render him liable, merely because the servant took a situation rendered dangerous from other causes when such other causes did not contribute to his injury.

The remaining objection is mainly answered by what is said concerning the objection that the respondent assumed the

risk of injury. The respondent could, of course, have escaped injury by not going between the lines at all while the strain was on them, but it was shown that he pursued the customary way of doing the work, and that the accident which caused his injury was not the result of the natural conditions. At best, therefore, it was a question for the jury to decide whether he ought to have kept outside the lines, not one for the determination of the court as a matter of law. The order of the court granting a new trial was well within its discretion, and will stand affirmed.

HADLEY, C. J., RUDKIN, DUNBAR, and CROW, JJ., concur.
MOUNT AND ROOT, JJ., took no part.