[No. 11555.    Department One.    April 27, 1914.]

## MAT MATTSON, *Respondent*, v. EUREKA CEDAR LUMBER & SHINGLE COMPANY, *Appellant*.[1]

APPEAL—RECORD—STATEMENT OF FACTS—AFFIDAVITS. Affidavits used in a motion for a continuance must be brought up on appeal by bill of exceptions or statement of facts, unless they are clearly identified by the motion and it can be inferred from the order that no other affidavits were considered.

RELEASE—FRAUD — EVIDENCE — SUFFICIENCY. Whether a release of damages for personal injuries in the fracture of a hip upon the payment of $250, was procured by fraud, is for the jury, where the plaintiff and the interpreter testified to the effect that it was represented to plaintiff that the doctor had said his leg was not broken, that he would be all right in two weeks, and that the $250 was paid as a sick benefit for loss of time, until he got in shape to work again.

SAME—FRAUD—QUESTION FOR JURY. Where the evidence of fraud in procuring a release is conflicting, it is for the jury to determine whether it is clear and convincing.

MASTER AND SERVANT—INJURIES—PROXIMATE CAUSE. There was sufficient evidence that the negligent piling of lumber was the proximate cause of an accident, where it appears that the method employed was to stand the lumber on end, reclining against the wall of the shed, which violently vibrated with the operation of a mill upon the same wharf, and that the braces used did not extend to the outer edge of the pile which fell, and that other piles had fallen from the vibrations, and plaintiff positively denied that he touched the pile, the only other cause suggested for its fall.

SAME—INJURIES—SAFE PLACE TO WORK—ASSUMPTION OF RISKS—QUESTIONS FOR JURY. The questions of the negligence of the master in failing to provide a safe place to work, and the assumption of risks, are for the jury, where an inexperienced man was sent to pile lumber at a particular place in a shed, by standing the lumber on end reclining against the wall, near a pile that had not been properly braced, and which fell through the vibration of the mill, that other piles had fallen from the same cause, and the danger was not so open and apparent as to be detected by ordinary observation.

NEW TRIAL—GROUNDS—NEWLY DISCOVERED EVIDENCE—DISCRETION. It is not an abuse of discretion to refuse a new trial for insufficiency of the evidence, where there was sufficient evidence on every controverted fact to require submission of the case to the jury.

[1]Reported in 140 Pac. 377.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered June 16, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a sawmill. Affirmed.

*Morgan & Brewer*, for appellant.

*A. M. Abel* and *W. H. Abel*, for respondent.

ELLIS, J.—The plaintiff brought this action to recover for personal injuries received by him while at work as a common laborer in the defendant's saw mill. The plaintiff is a Finn and cannot speak, read, write, or understand the English language. He had been working for the defendant for about two weeks, during which time he was engaged in loading cars. On the morning of July 31, 1911, the defendant's foreman took him to the shipping shed, where lumber is piled to await shipping, and directed him to work there piling lumber, indicating the place where he was to work. There were already many piles of lumber in this shipping shed, the piles being constructed in the following manner: The lumber, which consisted of flooring of various lengths, was assorted, tied in bundles of six boards each, and leaned against the wall of the shed, the upper end resting against the wall. Against these, other bundles of the same length were leaned, and so on, forming piles according to the lengths of the lumber in the bundles. The plaintiff, at the time of the accident, was engaged in taking bundles from trucks as they were brought into the shed, assorting them as to length, and leaning them against the appropriate piles. He was engaged in taking bundles of lumber from a truck, when a part of one of the piles fell on him, inflicting the injuries complained of.

The evidence shows that the shipping shed was built upon a wharf, constructed upon piling driven into the mud. Upon the same wharf, and at a distance variously estimated at from 40 to 150 feet from the shed, was the planing mill.

The evidence is conclusive that, when the planing mill was in operation, the vibration of the machinery shook the wharf and caused the shipping shed to vibrate with considerable violence. There was evidence that, in the absence of braces to secure the piles of lumber standing on end in the shed, the vibration would cause them to slide and fall. There was evidence that such braces were supplied between the piles, extending from the wall a distance of about six feet. The evidence further shows that the pile which fell upon the plaintiff extended some ten feet from the wall.

The negligence charged was that the defendant failed to furnish to the plaintiff a safe place to work, in that it negligently caused to be piled and maintained an unsafe, unsecured, and unstable pile of lumber not braced. No one save the plaintiff was present at the time of the injury. The plaintiff testified that he had not touched the particular pile of lumber which fell upon him. He was injured late in the afternoon of the same day in which he was first set to work in the shed. After his injury, he was taken to the Hoquiam general hospital with which the defendant had a contract for the care of its injured employees. Dr. McDonald, a member of the hospital staff, who treated all persons injured at the defendant's mill, treated the plaintiff for his injuries. After the plaintiff had been at the hospital for a few days, the defendant's manager called upon him with a view to securing a settlement for his injuries, but apparently the plaintiff could not understand what was said to him, and no agreement was reached. On the 10th of August, about ten days after the plaintiff was taken to the hospital, the manager, another man, and an interpreter came to the hospital, and after some conversation had been carried on through the interpreter, the plaintiff accepted $250 and signed a release in full for his injuries. The plaintiff admitted the signing of the release, and that he received the money, but alleged that he was induced to do so through fraudulent representations of

the defendant's manager and did not, in fact, know that it was a release.

The cause was set for trial on the 10th day of June, 1913. On June 4, the defendant moved for a continuance on the ground that the defendant's foreman at the time of the accident was no longer in the defendant's employ, and that it was necessary to secure his testimony before proceeding to trial. The motion for a continuance was denied. At the close of the plaintiff's evidence, motions for a nonsuit and for a directed verdict were interposed. These were overruled. At the close of all the testimony, the motion for a directed verdict was renewed and was again overruled. The jury returned a verdict for the defendant in the sum of $3,906.50. The defendant moved for a new trial. This was denied. Judgment was entered upon the verdict. The defendant appealed.

Preliminary to the discussion of the case in general, the appellant urges that the court committed error in refusing the continuance. The motion for a continuance was supported by certain affidavits which, it is claimed, were attached thereto. The motion, however, does not identify these affidavits, either by reference to the names of the affiants or by reference to their contents. The order denying a continuance makes no reference whatever to the affidavits. The affidavits are not included in nor made a part of the statement of facts, nor is there any certificate of the trial court that his order was based upon these affidavits or that no other affidavits were considered by him in passing upon the motion. These affidavits are only brought up by inclusion in the transcript. The respondent has interposed a motion to strike them. These affidavits do not fall within the rule announced in *State v. Vance*, 29 Wash. 435, 70 Pac. 34, upon which appellant mainly relies, much less within that rule as circumscribed by subsequent decisions. We have repeatedly refused to extend that rule or to apply it to any situation not a positive parallel, and have definitely declared

that, unless affidavits are clearly identified by the motion, and unless we can fairly infer from the order of the court that no other affidavits were considered by the trial court, we will decline to consider such affidavits unless embodied in and made a part of the statement of facts, duly certified. *Haines & Spencer v. Kelley*, 57 Wash. 219, 106 Pac. 776; *Swanson v. Pacific Shipping Co.*, 60 Wash. 87, 110 Pac. 795; *Spoar v. Spokane Turn-Verein*, 64 Wash. 208, 116 Pac. 627; *Sakai v. Keeley*, 66 Wash. 172, 119 Pac. 190; *Hayworth v. McDonald*, 67 Wash. 496, 121 Pac. 984. As pointed out in *International Development Co. v. Sanger*, 75 Wash. 546, 135 Pac. 28, we have repeatedly held that, where there is nothing in the record to show that evidence other than an affidavit attached to a motion was not considered by the court in ruling upon the motion, the action of the trial court will not be reviewed. In that case we said:

"For the guidance of the bar, we now announce the rule to be that this court will not in any case say that the judgment of the trial court is wrong upon questions of fact unless it has before it all the evidence upon which that court passed judgment, and this fact must affirmatively appear upon the record."

See, also, the more recent cases of *Powers v. Washington Portland Cement Co.*, ante p. 1, 139 Pac. 615, and *Agens v. Powell*, *ante* p. 131, 139 Pac. 873. These decisions indicate a steady recession from the broad rule announced in the *Vance* case, and state what we are now persuaded is the only safe and reasonable rule. These affidavits cannot be considered. The motion for a continuance being addressed to the sound discretion of the trial court, and there being nothing properly in the record upon which to base an intelligent review of its action, we cannot say that the court committed error in denying the continuance.

The appellant contends that its motion for a nonsuit at the close of respondent's evidence and, in any event, the motion for a directed verdict at the close of all the evidence,

should have been granted for the following reasons: (1)
that there was no evidence impeaching the respondent's set-
tlement and release of his claim for damages; (2) that
there was no evidence to show what caused the accident or
that it was due to any negligence on the appellant's part,
while there was evidence that the respondent assumed the
risk and that his injury resulted from his own negligence.
It is also contended (3) that a new trial should have been
granted because of insufficiency of the evidence to sustain the
verdict, and because of the refusal of the court to give cer-
tain instructions requested by the appellant.

I.    The evidence shows that the respondent could neither
read, write nor speak the English language, and had but little
understanding of it.    He testified that the appellant's man-
ager represented to him through the interpreter that the
company was giving him $250 as a sick benefit for loss of
time; that, at that time, he did not know how badly he was
hurt, and that the appellant's manager, through the inter-
preter, represented that the doctor had told him that there
was nothing the matter with the respondent's leg; that no
bones were broken, and that he would be able to work after
two weeks' time.    The interpreter through whom the settle-
ment was accomplished testified to the effect that, upon the
manager's direction, he told the respondent that the doctor
had told the manager that the respondent's leg was not
broken, but just sprained, and that it would be all right in
a couple or a few weeks; that the manager represented to
the respondent, through the interpreter, that he would be
making "easy money"—easier than working in the mill.    The
interpreter also testified that he did not read the release to
the respondent before it was signed by mark, but merely ex-
plained to him its contents.    The respondent testified that
he did not learn until a month and a half afterward, when so
told by a nurse in the hospital, that his hip was broken.    As
opposed to this, the testimony of the appellant's manager is
unsatisfactory and, in places, contradictory.    For example,

he testified that "the conversation was as to how much money he would take to settle, to get him in shape so he would get in shape to work again. He said he would be satisfied with $250." On cross-examination, he testified as follows:

"Q. You said something on direct examination about getting in shape to work again. Was the subject of his working again mentioned? A. No. Q. What did you refer to then when you said that—his getting in shape to work again? A. I never said so. Q. You didn't say so? A. No, your honor, I never said so."

He also testified that, before August 11, he had never had any talk with the doctor about the nature and extent of the respondent's injuries. If the jury believed this testimony, and, further, believed the testimony of the respondent, and the interpreter, which was positive to the effect that the manager represented that the doctor had told him that the leg was not broken and that the respondent would be able to work in a couple or a few weeks, then the jury was justified in finding that the settlement was induced by fraudulent representations. It is significant that the physician was not placed upon the stand, and the evidence is clear that, at the time of the settlement, the respondent did not know the nature or extent of his injuries. It is true, as stated in *Nath v. Oregon R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251, that a contract of settlement, like any other written contract, can only be impeached for fraud by clear and convincing evidence, but it is also true that, where the evidence is conflicting, it is for the jury to determine whether the evidence adduced is, in fact, clear and convincing. *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609; *Bjorklund v. Seattle Elec. Co.*, 35 Wash. 439, 77 Pac. 727; *Pattison v. Seattle, Renton & S. R. Co.*, 55 Wash. 625, 104 Pac. 825; *Hicks v. Jenkins*, 68 Wash. 401, 123 Pac. 526.

Moreover, the evidence clearly establishes the fact that the respondent suffered a fracture of the hip, the head of the femur being broken; that the leg is materially shortened,

and that there is little prospect of his ever recovering its full use. It is clear that the sum paid in settlement was wholly inadequate to compensate for the injury. This, as we have held, is some evidence that the respondent either did not know the extent of his injuries or did not realize the full purport of the paper when he signed it. *Hicks v. Jenkins, supra,* and authorities there cited. Whether the release was understandingly signed by respondent, and whether it was induced by fraudulent representations, were questions for the jury.

II. The respondent contends that the cause of the accident was purely speculative. We think not. The manner in which the lumber was deposited, reclining against the wall of the shed, the fact that the shed violently vibrated with the operation of the planing mill, which was situated upon the same wharf, the fact that the braces securing the lumber did not, at least in the instance of the pile which fell, extend to the outer edge of the pile, and that other piles had before fallen because of the vibration, were all established by what we deem a preponderance of the evidence. While much of this evidence was contradicted, its weight was for the jury. If the jury believed these things, it was justified in finding that the lumber fell because of the insecure manner in which it was piled and braced, and because of the vibration of the shed. No other cause was suggested, save that the respondent himself might have caused the fall by placing other bundles of lumber upon the pile. This he positively denied, his testimony indicating that he had not touched the pile which fell upon him, thus negativing the only other theory advanced which would account for the fall of the lumber.

The law applicable to this state of facts is elementary. It is too well established to require citation of authority, that there was a duty upon the part of the appellant to exercise reasonable care to furnish to the respondent a reasonably safe place in which to work. This is a positive, nondelegable duty, which carries with it the duty of reasonable inspection.

It is also well established that, when a servant proceeds to work in a given environment, under a direct order from the master or the master's representative, he does not assume the risk of any dangers not so open and apparent as to be detected by ordinary observation. Applying these principles, it is clear that the questions whether the appellant had met its duty to furnish the respondent a reasonably safe place in which to work, and whether the respondent pursued the rule of reasonable prudence in proceeding to work without inspecting the piles of lumber to determine the safety of the place, were, under the evidence, questions for the jury. The following decisions of this court are closely analogous on the facts, and exemplify the application of the principles of law involved. *Zintek v. Stimson Mill Co.*, 6 Wash. 176, 32 Pac. 997, 33 Pac. 1055; *Zintek v. Stimson Mill Co.*, 9 Wash. 395, 37 Pac. 340; *Gaudie v. Northern Lumber Co.*, 34 Wash. 34, 74 Pac. 1009; *Dumas v. Walville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091.

III.   Finding, as we do, that there was sufficient evidence upon every controverted question of fact to require its submission to the jury, it is manifest that we cannot say that the trial court abused its discretion in refusing to grant a new trial for insufficiency of the evidence to sustain the verdict. Nor do we find that the court erred in refusing to give the instructions requested by the appellant. In so far as they were not positively erroneous, they were covered by the instructions given, to which no exceptions were taken. We have examined the instructions given and find that they state, clearly and succinctly, the law applicable to the facts involved. The appellant has had a fair trial. We find nothing in the record warranting a reversal.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.