[No. 26644. Department One. November 8, 1937.]

R. W. WHITE, *Appellant,* v. CONSOLIDATED FREIGHT LINES, *Respondent.*[1]

[1]Reported in 73 P. (2d) 358.

*Wm. P. Lord, Stanbery Foster,* and *Thomas H. Maguire,* for appellant.

*James P. Neal, E. L. McDougal,* and *John M. Hickson,* for respondent.

BLAKE, J.—The defendant operates motor freight vehicles in Oregon, Washington, Idaho, and California. In 1933, the plaintiff was in its employ as a driver. The evening of October 5th of that year, he was assigned to drive a semi-trailer from Portland to Roseburg. As he was nearing Roseburg in the early morning of October 6th, some portion of the vehicle struck the railing of a concrete culvert. Plaintiff lost control, and truck and trailer piled up in the ditch. Plaintiff brought this action for injuries sustained, alleging that the accident was caused by the failure of the lighting system on the vehicle; that the failure of the lighting system was due to negligence on the part of defendant. At the close of plaintiff's case, defendant interposed a challenge to the sufficiency of the evidence, which the court overruled. The challenge was renewed at the close of all the evidence, at which time the court sustained the challenge and entered judgment dismissing the action. Plaintiff appeals.

In addition to charging negligence in the deficiency of the lighting system, appellant alleged in his complaint that the coupling attachment between the trailer and truck was defective. Upon argument in this court, his counsel disclaimed any right to recovery upon that ground. So our only question is whether the evidence is sufficient to take the case to the jury upon the charge of negligence in connection with the alleged failure of the lighting system.

In considering the question, as we said in *Weinman v. Puget Sound Power & Light Co.,* 175 Wash. 73, 26 P. (2d) 395,

"We begin with a reference to the well-established rule that a challenge to the sufficiency of the evidence, or a motion for nonsuit, admits the truth of the plaintiff's evidence and all inferences that can be reasonably drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant in the case."

■ And before considering the evidence, it may be well to advert to the rules of law by which the duties of respondent are to be measured.

"It is too well established to require citation of authority, that there was a duty upon the part of the appellant to exercise reasonable care to furnish to the respondent a reasonably safe place in which to work. This is a positive, nondelegable duty, which carries with it *the duty of reasonable inspection.*" (Italics ours.) *Mattson v. Eureka Cedar Lumber etc. Co.,* 79 Wash. 266, 140 Pac. 377.

It is admitted that there was no duty of inspection imposed upon appellant himself. He took the truck at Portland, loaded and ready to go, presumably in all respects inspected and made ready for the trip by other employees of respondent. Appellant testified that the equipment was apparently in good running order, and he had no trouble until he had gotten about forty-five miles beyond Eugene, when the electric windshield swipe stopped working. He stopped and made an examination, and looking "under the dash to see what was the matter," he found that "the wire was just wrapped up around the windshield switch wire, not connected up with the switch at all." The lights, however, though less than normal, were sufficiently bright to follow the yellow line in the middle of the road, so he continued on his journey. As he approached the culvert, the lights all went out at once. He testified to the effect that all the lights going out at once could be accounted for only by reason of a "broken wire or a loose wire . . . or a loose connection;" that, by

reasonable inspection, such a condition could have been discovered.

One Missler testified that he was in the employ of respondent at that time, and had taken the same equipment on a run the night of October 2nd-3rd; that, during the trip, all the lights went out at once, due to a short circuit in the light wiring; that they caught fire, and some of the wires under the dashboard burned off; that he made an emergency repair, splicing and twisting together the wires under the dash. Missler reported the trouble when he turned the equipment in at the end of the run, which had covered in the neighborhood of three hundred miles.

Upon these facts, we think it quite clear that the trial court was correct in overruling respondent's challenge to the sufficiency of the evidence at the close of appellant's case.

But respondent says that, in any event, it produced evidence upon which the court was compelled, as a matter of law, to hold that it (respondent) had fulfilled its duty of reasonable inspection of the equipment and reasonable care in making it safe. This evidence consisted of testimony of the shop foreman and two employees in respondent's service department and a driver who made a trip to Seattle and return with the equipment on the night of October 4th-5th. The latter testified that the lights gave no trouble on that trip.

The foreman of the shop testified that, after a vehicle has been run two to four hundred miles, it is customary to check the brakes and lights; that, after it has been run in the neighborhood of a thousand miles, it is given what is called No. 1 service; that No. 1 service includes a complete inspection of the wiring system; that No. 1 service was not given on October 5th; that, when Missler turned the equipment in on October 3rd,

with the report of difficulty with the lights, it was turned over to the shopmen for repairs. One, Stockman, testified that he found trouble "underneath the instrument board;" that he "put in two new wires that were needed there;" that he checked all the wires and all the lights, hit them and tapped them to see if there were any loose connections; that he tightened the connections in the head lamps. Borst, the other shopman, testified that he inspected the batteries and the lines that ran to the ammeter and found them in good condition.

The sum and substance of the testimony of these witnesses is that the equipment, with respect to its lighting system, had been completely inspected on October 3rd; that the lights had given no trouble on the night of October 4th-5th; and that they had been checked on October 5th by shaking the headlamps and cowl lights to see whether there was a short or flicker. If this testimony were to be taken at its face value, it could well be said, as a matter of fact, that respondent fulfilled its "duty of reasonable inspection." But we do not think, under this record, that it can be so held as a matter of law, for, in order to reach that conclusion, it is necessary to pass upon the credibility of the four witnesses to whose testimony we have referred. That is the function of the jury. In sustaining the challenge to the sufficiency of the evidence, the court trenched upon the province of the jury.

Respondent urges that the cause of the accident is purely speculative. We do not think so. It is not seriously contended that failure of all lights at once is a common occurrence. It is clear from the evidence that such an event happens only because of some major defect or break in the lighting system. Whether the break or defect was the result of a fortuitous event for which the employer could not be held liable, or

whether it was such as could have been discovered and remedied by reasonable inspection, was, under the evidence in this case, for the jury to say.

█ While what we have said disposes of the appeal, we think it advisable to discuss another problem which, unless now disposed of, would be presented on a second trial and doubtless form the basis of another appeal.

From what we have already said, it is apparent that appellant's complaint was couched in terms of a common law action for negligence. It was also grounded on a statute of Oregon, conceived to be applicable to the facts upon which appellant relied for recovery. The statute is known as the Oregon Employers' Liability Act. So far as material here, the act (3 Oregon Code Ann., § 49-1701) imposes on employers engaged in the operation of any machinery the obligation to see that all metal, wood, rope, glass, rubber, gutta percha, or other material whatever, shall be carefully selected and inspected and tested, so as to detect any defects;

" . . . and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Section 49-1705 of the act, in substance, abolishes the fellow-servant doctrine, with respect to injuries sustained by an employee as a result of the failure of the employer to comply with the obligations imposed upon him by § 49-1701. Section 49-1706 provides that contributory negligence shall not be a defense, but may be taken into account in assessing damages. As construed by the supreme court of Oregon, the act also

abolishes the doctrine of assumption of risk in cases falling within its scope. *Hill v. Saugested*, 53 Ore. 178, 98 Pac. 524, 22 L. R. A. (N. S.) 634.

Appellant takes the position that his cause of action falls within the purview of the act. We do not think the position tenable, in view of the decision of the supreme court of Oregon in the case of *Ridley v. Portland Taxicab Co.*, 90 Ore. 529, 177 Pac. 429, holding that a cause of action of a taxicab driver for injuries sustained as a result of a defective wrench furnished by his employer to remove punctured tires, does not fall within the employers' liability act.

The judgment is reversed, and the cause remanded for further proceedings.

HOLCOMB, MILLARD, and GERAGHTY, JJ., concur.

STEINERT, C. J. (dissenting)—The questions of fact in this case are (1) What caused the lights on the truck to go out? (2) If caused by a broken or loose wire or loose connection, could such defect have been discovered by reasonable inspection? and (3) Was such inspection made by the respondent?

The only evidence produced by appellant on these questions of fact was the testimony of himself and that of the witness Missler. Appellant's testimony upon these factual phases of the case is comprehended in the following excerpt quoted in his brief:

"Q. And from your experience with equipment of the sort that was involved here what would or could cause the headlights to fail in the manner that they did and go out? A. Well, a loose or a broken wire would put them all out. Q. And anything else? A. Well, the bulbs will burn out. There is hardly ever they will all burn out at the same time without some other cause. Sometimes a broken wire or a loose wire will do it or a loose connection. Q. Any other cause that might enter into it? A. None that I can think of right now. Q. And all of these things, according to your expe-

rience with and knowledge of these vehicles, could those be detected by a shop inspection? A. I think they should. Q. Is there anything hidden about a defect of that sort, a loose connection or a loose wire or anything like that, that could not be detected by reasonable inspection? A. I think not."

The substance of this testimony is that a loose or broken wire would put out the lights, and that, possibly, all the bulbs might burn out at one time; that appellant could think of no other cause; that appellant also thought that such matters could be detected by reasonable inspection. At best, this testimony was conjectural.

The witness Missler testified that, a few days before the accident, while he was operating the same truck, all the lights went out at once as the result of a short circuit in the light-wiring, that he had made an emergency repair and had reported the trouble to the Portland shop at the end of his run.

I will assume, as the majority asserts, that this evidence, taken together, would withstand a challenge to its sufficiency at the close of appellant's case.

The majority opinion then recites the evidence introduced on behalf of respondent, and concedes that, if taken at its face value, it could be well said, as a matter of fact, that respondent had fulfilled its "duty of reasonable inspection." It is said, however, by the majority that it could not be held, *as a matter of law*, that respondent had discharged its duty because, in order to reach that conclusion, it was necessary to pass upon the credibility of four witnesses for respondent, and that this was a function of the jury.

While it is not specifically so stated, the inference to be drawn from the majority opinion is that respondent's four witnesses were its own employees, and that, therefore, the jury was not required to believe them. The fact is, however, that the witness Stockman was

*not* in the employ of respondent at the time of the trial and had not been for two and one-half years prior thereto. He had, in the meantime, been engaged for awhile in operating his own shop and, at the time of the trial, was assistant superintendent on a W. P. A. project, being in full charge of all trucks and equipment. He was, therefore, a disinterested witness.

Touching Stockman's qualifications as a mechanic, the record discloses that he had had three shops of his own, had been shop foreman for Studebaker Corporation in Portland for five years, had been with the Dodge and Plymouth dealers for some time, and had also worked for White Truck Company and Consolidated Freight Lines. His experience was in no way disputed.

Stockman testified in detail as to the specific repairs that were made on the truck on October 4th, which was two days before appellant started upon the particular trip. Regarding the inspection that was made after the repairs had been completed, he testified as follows:

"Q. What was the condition of the lighting equipment after those repairs were completed? A. Well, after I got through working on it it was all completed, all fixed up; everything was o. k. Q. And what inspection or what checking did you do after that to determine that they were in proper shape? A. We checked all the wires and checked all the lights, hit them, tapped them, to see if there was any loose connections any place; also tightened the connections in the head lamps, the sockets."

He further testified, on cross-examination, that the inspection which he had made was all that could be made.

There was no evidence contradicting Stockman's testimony that the repairs and inspection had been made, and no evidence that the inspection made by him was not a reasonable one. If there had been any

question as to the sufficiency of the inspection, appellant could undoubtedly have obtained experts galore to so testify. But appellant himself did not even contradict the testimony thus given by Stockman.

It is worthy of note, also, that, at the time when the lights went out, appellant had been driving the truck for eight and one-half hours and had then covered a distance of one hundred and ninety-four miles. The fact that the lights then suddenly went out is no proof that a reasonable inspection had not been previously made.

With positive and uncontradicted evidence from a disinterested witness as to the fact of inspection and its reasonableness, there was nothing for the jury to pass upon, and, since those issues were the determinative features in the case, the jury could not have been permitted to disregard such evidence and render a speculative verdict.

The court was right, I think, in determining the question as a matter of law. I therefore dissent.