37 Wn.2d 897 (1951)
227 P.2d 165
ALBERT L. MYERS, Appellant,
v.
LITTLE CHURCH BY THE SIDE OF THE ROAD, Respondent.[1]
No. 31364.
The Supreme Court of Washington, Department Two.
January 27, 1951.
Ervin F. Dailey, for appellant.
Lycette, Diamond & Sylvester, for respondent.
HAMLEY, J.
This action was brought by Albert L. Myers against Little Church By the Side of the Road, to recover damages for injuries sustained while operating an elevator. The jury returned a verdict of three thousand dollars for plaintiff. The trial court thereafter granted defendant's motion for judgment notwithstanding the verdict, and also its motion for a new trial in the event of reversal of the judgment n.o.v. Judgment was entered accordingly, and plaintiff has appealed.
The evidence, when viewed in a light most favorable to appellant, discloses the following facts: Appellant began working as a night clerk at the St. Regis hotel, in Seattle, in March, 1945. His working hours were from 11:00 p.m. until 7:00 a.m., the next day. His duties were to check guests in and out of the hotel, answer the telephone, run the elevator, and attend to room service for the guests. There were eight floors in the hotel and one hundred thirty-one rooms to attend.
The elevator used for guests in the building was of metal, and doors opened into the hall on each floor from the elevator shaft. Early in July, 1945, a folding metal door had been installed on the elevator cage. This folding door, however, was not used by the employees after the *900 first week following its installation. A pencil had been placed in the control box by some person other than appellant, so that the cage door at all times remained in an open position.
The elevator was operated with a hand lever in a control box. When the lever was up, it was in a neutral position. When the lever was moved from neutral to the left, the elevator went down. When the lever was moved from neutral to the right, the elevator went up. When the lever was released it was supposed to return to a neutral position.
On August 1, 1945, respondent took over the operation of this hotel, and placed Charles Ray in charge as the new manager. Mr. Ray was at the hotel only in the day-time, and was never there during Myers' shift. The manager did ride on the elevator, however, and was presumably aware of the fact that the folding door on the cage was fastened back and not used.
A night or two before August 8, 1945 (when the accident occurred), the elevator had suddenly stopped while it was being operated by Myers. The evidence does not disclose whether the elevator was traveling up or down at the time, whether it stopped at floor level or between floors, or whether Myers was able to get it going again. Myers testified that the elevator had given similar trouble on one or two previous occasions. There is nothing in the record as to the details regarding these previous difficulties, or whether they occurred before or after respondent took over operation of the hotel on August 1, 1945. Myers testified, however, that he knew of no occasion, prior to the accident, on which the elevator, after stopping in this manner, suddenly started up.
On all of these occasions, Myers, following instructions which he had received, called a specified elevator company and asked the company to send a mechanic to fix the elevator. This company, in addition to answering such service calls, made regular weekly inspections of the elevator. When service calls of this kind were received, the company would send out repairmen within an hour or an hour *901 and a half and make the necessary adjustments. Myers told fellow employees of these difficulties with the elevator, but did not tell the manager. There is nothing in the record indicating that the manager or anyone else on behalf of respondent (except the elevator company) received notice of the difficulties which were being experienced.
About five-thirty o'clock on the morning of August 8, 1945, Myers, while on duty at the hotel, received a call from the seventh floor, and started up in the elevator. When the elevator arrived at a point just below the second floor and above the mezzanine floor, it stopped and would not start. Appellant released the hand lever and stepped over to the hall door, which opened from the shaft, in an attempt to leave the elevator, or to jar it so that he could start it again. As he did this, the elevator suddenly started of its own accord. Appellant did not have his hand on the control lever at this time, and could not have had, in the position his foot was then in. Appellant was unable to state what caused the elevator to stop and then start up in this manner. However, he did testify that it was not due to a power failure, as other electrical service in the hotel had not been interrupted.
When the elevator started up suddenly in this manner, appellant's toes were caught between the floor of the elevator and the ledge extending between the mezzanine and second floors of the hotel. The result was that appellant suffered the injuries for which he here seeks recovery.
Did these facts, and every favorable inference which may reasonably be drawn therefrom, warrant the jury in finding that respondent was negligent, and that such negligence was the proximate cause of the accident? If not, then the judgment n.o.v. was properly entered.
[1] It is the master's duty to furnish his servant with a reasonably safe place to work. Nordstrom v. Spokane & Inland Empire R. Co., 55 Wash. 521, 104 Pac. 809, 25 L.R.A. (N.S.) 364; South v. Seattle, Port Angeles & Western R. Co., 99 Wash. 51, 168 Pac. 896; Cummins v. Dufault, 18 Wn. (2d) 274, 139 P. (2d) 308. The reciprocal obligations of the master and servant, as set out in the *902 Nordstrom case, and quoted with approval in Cummins v. Dufault, supra, are as follows:
"When the relation of the master and servant is sustained, the law implies and fixes upon each certain duties and responsibilities, which are reciprocal in their nature. These duties, in so far as they relate to the case before us, are that the master shall furnish the servant with a reasonably safe place in which to work, and shall take the precaution of an ordinarily prudent man in keeping the place reasonably safe. He shall furnish the servant with proper tools and appliances that are reasonably safe for the use required of them, and use ordinary care in so keeping them. He shall, in case of any latent or hidden danger known to him and unknown to the servant, apprise the servant of the existence of such danger and the possibilities of consequent injury, and he shall employ such only as have sufficient intelligence to comprehend the danger, if any, of the situation. Having thus acted, he has fulfilled his full duty to his servant, and the servant in his turn takes upon himself the obligation of using such care and precaution for his own safety as an ordinarily prudent man would use under like circumstances, and assumes the risk of injury from obvious and apparent dangers; and the same force of reasoning which holds the servant to assume the risk of only obvious and apparent dangers, releases the master from liability from dangerous conditions or situations of which he has no knowledge, or of which he could not acquire knowledge in the exercise of ordinary diligence on his part."
[2] The testimony, as summarized above, would justify the jury in finding that this accident resulted from a latent defect in the control mechanism. This latent defect caused the elevator, on several occasions, to come to a sudden stop. On the occasion of the accident, it also caused the elevator suddenly to start up after coming to such a stop. The jury could also have concluded that the elevator company had knowledge of that latent defect prior to the time of the accident.
This was, in effect, notice to the master, since the elevator company stood in the position of vice-principal, charged by the master with the latter's duty to keep the elevator *903 in a reasonably safe condition. The applicable rule is stated in Corpus Juris Secundum, as follows:
"Notice to a servant or agent who stands in the position of a vice principal, and who is charged with those duties of the master, the neglect of which occasioned the injury, is notice to the master." 56 C.J.S. 1004, Master and Servant, § 248.
[3] Only one of the prior instances of elevator trouble was definitely established as having occurred after respondent took over the hotel, and this instance occurred only a day or two before the accident. The jury could have found, however, that even this much notice provided reasonable opportunity to correct the difficulty or suspend the use of the elevator. In White v. Consolidated Freight Lines, 192 Wash. 146, 73 P. (2d) 358, it was held that, where an employee was injured when the lights went out on his truck, evidence that another employee had reported similar trouble a day or two before warranted the jury in finding that the master had reasonable notice of the defect and opportunity to correct it.
[4] We do not find significance in the fact that none of the prior instances involved a sudden starting of the elevator after it came to a stop. The sudden stopping served notice that the mechanism was defective. This gave fair warning that the elevator might react in other ways which would prove dangerous, or so the jury might reasonably conclude.
The elevator company, with notice of the difficulty, inspected the mechanism, but failed to make the required correction in a manner which would prevent recurrence of the trouble. The jury could reasonably find, on the basis of these facts, that the elevator company did not use reasonable care in ascertaining the cause of the trouble and in making repairs. It was not necessary to establish negligence by direct and positive evidence. As we said in McGinn v. North Coast Stevedoring Co., 149 Wash. 1, 9, 270 Pac. 113:
"... It [negligence of the master] may arise from circumstances and inferences to be deduced from the conditions *904 as shown. The same is true as to whether the master failed to exercise reasonable care in the selection of an apparatus or reasonable care in keeping it in a condition suitable for use. [Citing cases.]"
[5] The master's duty to provide the servant with a reasonably safe place to work is nondelegable. Howland v. Standard Milling & Logging Co., 50 Wash. 34, 96 Pac. 686; Mattson v. Eureka Cedar Lbr. & Shingle Co., 79 Wash. 266, 140 Pac. 377; Stanke v. Spokane etc. R. Co., 181 Wash. 472, 43 P. (2d) 961; White v. Consolidated Freight Lines, supra.
Therefore respondent cannot escape liability for the negligence of the elevator company on the theory that the latter was an independent contractor  and no such contention has been advanced. See 56 C.J.S. 883, 909, Master and Servant, §§ 186, 204; 57 C.J.S. 365, Master and Servant, § 591. For the same reason, respondent cannot insulate itself from liability by proving that it used reasonable care in selecting the elevator company which was to perform respondent's duty of making reasonable repairs. This would no more release the master from liability than were he to prove that an employee who had been negligent in repairing the elevator had been selected for that purpose with reasonable care. See 56 C.J.S. 1111, 1120, Master and Servant, § 333.
[6] The foregoing analysis leads us to conclude that the jury was warranted in finding that there was negligence which was imputable to respondent, and that such negligence was the proximate cause of the injury. We might reach an entirely different conclusion if our function here were to weigh all the evidence and arrive at our own independent view as to whether the claim of negligence is supported by a preponderance of the evidence. The trial court, in its memorandum opinion, spoke of "evaluating" the evidence. While we doubt that the court actually intended to weigh the conflicting evidence in passing on the motion for judgment n.o.v., it seems to us that the result reached had that effect.
*905 [7] The rule which we have applied, and which should govern both the trial court and this court, is stated in the recent case of Olsen v. White, ante p. 62, 221 P. (2d) 542, as follows:
"A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. Billingsley v. Rovig-Temple Co., 16 Wn. (2d) 202, 133 P. (2d) 265, and cases therein cited. Williams v. Hofer, 30 Wn. (2d) 253, 191 P. (2d) 306. When confronted with such a situation it becomes the duty of the court to be guided by the above rule, rather than to consider all of the evidence presented during the trial."
Respondent also argues that the judgment n.o.v. was proper because appellant was contributorily negligent as a matter of law. Respondent urges that appellant's contributory negligence consisted of (1) running the elevator without using the folding safety door which was attached to the cage; and (2) projecting his foot beyond the limits of the cage while attempting to start the elevator while it had stalled. The facts are not in dispute, since appellant testified that he did not use the safety door and that he did place his foot beyond the edge of the cage.
[8] The jury, under the facts summarized above, could have found that it was the custom and practice of all employees, acquiesced in by respondent, to run the elevator without using the folding safety door. The failure of appellant to use the safety door on this particular occasion would not then be contributory negligence. 3 Labatt's Master and Servant (2d ed.) 3523, § 1269; 56 C.J.S. 1279, Master and Servant, § 452.
[9] Even if it could be said, as a matter of law, that appellant was contributorily negligent in failing to use the safety door, it could not be asserted, with equal assurance, that such negligence was a proximate cause of the accident. *906 There is no reason to believe that the elevator would not have come to a stop between floors even though the safety door were closed. Had this occurred, appellant could not have injured himself as long as the safety door remained closed. This accident, however, happened at five-thirty o'clock in the morning, and appellant was the only employee on duty. The jury would be justified in concluding that, under these circumstances, a reasonably prudent person would have opened the door in an attempt to start the elevator or leave it. We are therefore of the view that proximate cause, assuming contributory negligence in failing to use the folding door, was a jury question.
On the question of whether appellant's act in projecting his foot beyond the elevator cage amounted to contributory negligence as a matter of law, respondent cites 18 Am. Jur. 554, Elevators and Escalators, § 60. It is there stated that contributory negligence may be found as a matter of law
"... where an elevator attendant is injured by reason of the projection of his body beyond the limits of the cage where his only excuse is that he did not think of the danger."
American Jurisprudence cites Cronin v. Columbian Mfg. Co., 75 N.H. 319, 74 Atl. 180, 29 L.R.A. (N.S.) 111, in support of this statement. The opinion in the Cronin case fully supports the announced rule, but reveals circumstances which make it inapplicable here. In that case the plaintiff employee was a passenger on a mill elevator which was being operated by another employee. While the elevator was in motion, plaintiff leaned back against some boxes which were being carried in the elevator, put one foot on a crosspiece, and permitted his foot to extend a short distance beyond the guard. He testified that he knew that the sides of the elevator came very close to the edge of the floor. He also stated that if he had thought about it he would have realized that if his foot extended beyond the elevator, it would hit the floor as the elevator arose. The court held that this constituted contributory negligence *907 as a matter of law, saying that the plaintiff was confessedly thoughtless and careless.
The situation in the case before us is quite different. The elevator had stalled about sixteen or eighteen inches below the second floor. Appellant was endeavoring either to open the hall elevator door at the second floor level, so that he could leave the elevator, or to jar the elevator so that when he returned to the control mechanism he could start the elevator. In doing this he had to project his hands beyond the edge of the cage. Had he succeeded in opening the door, he would have had to project his entire body beyond that edge in order to leave the elevator. These were risks appellant had to take if he was to extricate himself from the situation in which he found himself.
Whether it was necessary for appellant to also extend his foot while endeavoring to open the hall door, is not entirely clear from the record. Assuming that this act was not necessary, it was at least not an aimless, heedless act as in the Cronin case. At most, it was the result of temporary forgetfulness of danger while appellant was preoccupied in the task of releasing himself from the elevator.
[10] The ultimate question here, as in every case involving negligence, is whether the servant acted as an ordinarily prudent man would have acted under the circumstances. Nordstrom v. Spokane & Inland Empire R. Co., supra, 35 Am. Jur. 679, Master and Servant, § 249. Applying that general principle to situations similar to that described above, our court and the courts generally have held that the servant's contributory negligence is a jury question. King v. Griffiths-Sprague Stevedoring Co., 45 Wash. 425, 88 Pac. 759; Passage v. Stimson Mill Co., 52 Wash. 661, 101 Pac. 239. As stated in Labatt's treatises on Master and Servant:
"Where the servant failed to take such precautions as were appropriate for the purpose of protecting himself at the moment when the accident occurred, evidence that such failure was due to the fact that his attention was engrossed by his duties is always competent for the purpose of rebutting the inference of contributory negligence which *908 might otherwise be drawn from his conduct; and if such evidence is offered, a court is very seldom justified in declaring him to have been, as a matter of law, wanting in proper care." 3 Labatt's Master and Servant (2d ed.) 3514, § 1266.
It is also contended, in support of the judgment, that appellant assumed the risk of being injured in this manner.
[11] The "assumption of risk" doctrine is grounded upon the express or implied terms of the contract of employment. Murphy v. Pacific Tel. & Tel. Co., 68 Wash. 643, 124 Pac. 114. The servant, by reason of such contract, is said to assume the risks ordinarily incident to the work in which he is engaged. Walsh v. West Coast Coal Mines, 31 Wn. (2d) 396, 197 P. (2d) 233; Eiban v. Widsteen, 31 Wn. (2d) 655, 198 P. (2d) 667; 35 Am. Jur. 715, Master and Servant, § 293. The servant does not assume the risk of injury from dangers which are not obvious and apparent. Nordstrom v. Spokane & Inland Empire R. Co., supra; Cummins v. Dufault, supra.
The jury could reasonably conclude that there was no obvious and apparent risk in operating the elevator on the day in question, or in failing to use the folding safety door. Appellant was entitled to believe that the defect in the control mechanism, which had been noticed and reported a day or two previously, had been corrected. He could also assume that it would not be dangerous for him to follow the customary practice of all employees in leaving the safety door in an open position.
[12] With respect to appellant's act in projecting his foot beyond the edge of the elevator, we have already seen that the jury could attribute this to temporary forgetfulness of a known danger while engaged in other duties. The doctrine of assumption of risk would not apply under such circumstances, since there is lacking the element of full comprehension of the risk. The authorities referred to above in connection with the discussion of contributory negligence are, by reason of the analogous situation, applicable here. As Labatt states:
"It would clearly be inconsistent with the rationale of the defense of assumption of risks to regard it as being applicable *909 in cases where, through mere inadvertence at the time of the accident, the servant failed to recollect or to observe the existence of a risk previously known to and appreciated by him." 3 Labatt's Master and Servant (2d ed.) 3224, § 1193.
A different conclusion would be called for if we were concerned with a transaction involving the Federal employers' liability act. We would then be required to apply the contrary Federal court rule as to assumption of risk in the case of momentary forgetfulness. Stanke v. Spokane etc. R. Co., supra.
[13] The court submitted to the jury the question of assumption of risk on instructions which were fair and correct, as it did also on the issues of negligence and contributory negligence. We are not persuaded that any of these issues should have been decided by the court as a matter of law.
The court, in addition to granting the motion for judgment n.o.v., also granted respondent's motion for a new trial in the event of reversal of the judgment n.o.v. Having decided that the judgment n.o.v. should be reversed, it now becomes our duty to determine the validity of the ruling on the motion for a new trial. Rule of Practice 14, 34A Wn. (2d) 78.
The motion for new trial was granted on the ground that appellant had been erroneously permitted to testify as to what he saw in the X ray taken of his injured foot, without the X ray being introduced in evidence, and without appellant establishing his qualifications to interpret X rays.
[14] There was no objection made at the trial going to the question of whether appellant's testimony was secondary evidence, and that the X ray was the best evidence and should first be introduced. The only objection was as to appellant's competency to interpret the X ray. Accordingly we cannot now review the claimed error resulting from the failure to introduce the X ray. Titlow v. Cascade Oat Meal Co., 15 Wash. 652, 47 Pac. 19; St. Martin v. Skamania Boom Co., 79 Wash. 393, 140 Pac. 355; Miller v. Sheane, 120 Wash. 227, 206 Pac. 913.
*910 Appellant testified that he could tell from the X ray that there were two breaks on the big toe and one on the toe next to it. No effort was made to qualify appellant as an expert in the interpretation of X rays. Proper objection, on the ground of the lack of qualifications of the witness, was made to the question which elicited this testimony.
[15] We are of the opinion, however, that, assuming the objection to this testimony should have been sustained, such testimony was nevertheless not prejudicial. Counsel for respondent, in thereafter cross-examining appellant, introduced in evidence as an exhibit, and read to the jury, a written statement which appellant had made shortly after the accident. Included in this statement is the following sentence:
"I broke the bone in the large toe in one place and the second toe had two bone fractures."
This statement, introduced by respondent, conveyed the same information as contained in the X-ray testimony, except for the insignificant variance as to which toe had suffered two fractures. The introduction of this statement, which was in substantial accord with the X-ray testimony, therefore, obviated any prejudicial effect which the X-ray testimony might otherwise have had. Puget Sound Navigation Co. v. Lavender, 160 Fed. 851, 854; 5 C.J.S. 951, Appeal and Error, § 1721.
The motion for a new trial should not have been granted.
The judgment is reversed, and the case remanded with direction to vacate the judgment of dismissal of the action and to enter a judgment on the verdict of the jury.
ROBINSON, MALLERY, GRADY, and DONWORTH, JJ., concur.
NOTES
[1] Reported in 227 P. (2d) 165.