[No. 37068.    Department One.    April 2, 1964.]

BESSIE M. GUY, *Respondent*, v. NORTHWEST BIBLE COLLEGE, *Appellant*, JOHN C. BRYANT *et al.*, *Respondents.**

*Reported in 390 P. (2d) 708.

*Ferguson & Burdell*, by *W. Wesselhoeft*, for appellant.

*Kahin, Horswill, Keller, Rohrback, Waldo & Moren*, for respondent Guy.

*Lycette, Diamond & Sylvester*, by *John P. Lycette, Jr.*, for respondents Bryant and Butterfield.

HUNTER, J.—The plaintiff, dean of women at the defendant (appellant) college, recovered a judgment in the lower court for personal injuries sustained when a screen in the chapel of the college fell upon her.

The college built the chapel in 1959. Although a firm of architects, Bryant and Butterfield (defendants), was employed, the college did not employ a contractor for the construction, but instead designated its own employee, one Secrist, an experienced carpenter, to superintend and coordinate the functions of the various subcontractors. Two screens were placed in the back of the chapel to block the view in front of the doors to the restrooms. Each screen weighed about 250 pounds, and was not fastened to the ceiling. Foam rubber was attached to the top of the screens and they were forced against the ceiling by means of "screw jacks."

A detailed sketch of the screens, made by the architects, was missing and testimony was in conflict as to what the sketch contained. Secrist claimed that when he built the screens he followed the sketch, except for minor changes in the position of the screw jacks at the bottom of the screens.

The architects testified that the sketch called for "anchor bolts" at the top of the screens.

There was testimony that the screen that fell upon the plaintiff had started to fall on two previous occasions; that a professor and a part-time watchman knew of these falls. A janitor also knew that the other screen had been loose.

On December 10, 1959, plaintiff (respondent) placed a notice on the bulletin board on the screen in front of the girls' restroom, and as she was looking at the other items on the bulletin board, the screen fell upon her inflicting severe personal injuries.

Plaintiff commenced this action against the college and the architects, and the defendants cross-complained against each other. The trial court directed a verdict against the college, and submitted to the jury the question of damages and the issue of who shall ultimately bear the loss between the college and the architects. The jury returned a verdict awarding $45,000 damages to the plaintiff, and found in favor of the architects against the college. The college appeals.

The college assigns error to instruction No. 1, which directed a verdict in favor of the plaintiff. The college argues that it is not responsible for injuries caused solely by defective plans prepared by the architects; that its duty is to maintain the premises in a reasonably safe condition, and the architects alone are responsible for improperly designing the screens.

■ Even though we assume the plans were defective, this would not relieve the college of its responsibility to provide its employees with a reasonably safe place to work. An employer has a positive, nondelegable duty to furnish his employees with a reasonably safe place to work. *Siragusa v. Swedish Hospital*, 60 Wn. (2d) 310, 373 P. (2d) 767 (1962); *Cummins v. Dufault*, 18 Wn. (2d) 274, 139 P. (2d) 308 (1943); *Richardson v. Spokane*, 67 Wash. 621, 122 Pac. 330 (1912). The rule is correctly stated in 56 C.J.S., Master and Servant § 204, which we cited in *Myers v. Little Church By The Side Of The Road*, 37 Wn. (2d) 897, 227 P. (2d) 165 (1951):

"The duty to furnish safe tools, machinery, appliances, and places for work is a positive, affirmative duty resting on the master, and cannot be delegated to another, or, rather, cannot be delegated to another so as to relieve the master of his primary liability, and the agency or person to whom the duty is attempted to be delegated is immaterial. This is true no matter how carefully the person or agency to whom the duty is attempted to be delegated is selected or how competent or reputable he or it may be. . . ."

See *White v. Consolidated Freight Lines*, 192 Wash. 146, 73 P. (2d) 358 (1937); *Howland v. Standard Milling & Logging Co.*, 50 Wash. 34, 96 Pac. 686 (1908).

There is no distinction between responsibility for design and responsibility for maintenance, and the college cannot avoid liability by reason of the allegedly defective plans of the architects that it selected. The college, acting through its agents, built and maintained the screens. Construing all the evidence in favor of the college, we hold that the minds of reasonable men could not differ in concluding that the college was negligent in construction or maintenance. Although the architects may ultimately bear the loss in a situation such as this, the primary duty of the employer to provide a reasonably safe place to work is not affected. Here the issue of the architects' liability was submitted to the jury, and the jury found they were not negligent.

The college assigns error to the failure of the trial court to give proposed instructions Nos. 2 and 3, concerning whether the knowledge of the employees that the screen had previously fallen could be imputed to the college. The college argues that the instructions were necessary for the jury to determine whether the conduct of the college constituted an intervening cause; that in the absence of such an instruction, the jury may have found the plans were in fact defective but the negligence of the college was the sole intervening cause of the accident. The proposed instructions are appropriate only for the purpose of determining the negligence of the college and its liability to the plaintiff, which issue had been taken from the jury by the directed verdict. Giving these proposed instructions without a further explanation would have been confusing and in-

consistent with the directed verdict. The instructions contained no language that they were to be considered by the jury for the purpose of determining the issue of intervening cause, as now contended by the college, and the trial judge properly refused to give them.

The college next urges that the verdict was so excessive as to indicate passion and prejudice.

There was testimony that the accident caused a compression fracture of plaintiff's twelfth dorsal vertebra, entailing a loss of 50 to 70 per cent of the vertical height of the vertebral body. When she was taken to the hospital her scalp had to be sutured, and for the first 4 days at the hospital she could not be moved. For the next 2 months she was in a pressure cast with her back hyperextended. She had to wear a brace for several months, and at the time of trial, almost 3 years after the accident, she was still wearing an abdominal and neck support. The accident injured her ankle, and knee, both of which continue to give her trouble. The treatment in the hospital and the cast aggravated a pre-existing osteoporosis condition, also a pre-existing irritation of the vulva, and created a hemorrhoid problem. Her physical condition has considerably deteriorated as a result of the accident, and the pain she experienced. Although she returned to her full-time teaching position 11 months after the accident, she continued to suffer a great deal of pain, and she was not able to assume all the duties that her job normally encompassed. She was 50 years old at the time of trial, and had a life expectancy of 23.63 years.

The jury awarded $45,000, of which $4,862.26 consists of previously incurred medical expenses and lost wages.

■ After an examination of the record we find nothing to indicate unmistakably that the verdict must have been the result of passion or prejudice. We are satisfied that the damages awarded were within the range of the evidence. *Reddington v. Washington Natural Gas Co.*, 57 Wn. (2d) 776, 359 P. (2d) 497 (1961); *Kramer v. Portland-Seattle Auto Freight*, 43 Wn. (2d) 386, 261 P. (2d) 692 (1953).

The college finally contends that a new trial should be granted for misconduct of plaintiff's counsel during his final

argument. In the course of his argument, he said:   . . ."I appreciate you probably have a reputation as a very conservative jury panel, which I think is fair and fine.   . . ." It is argued that the jury would seek to offset that reputation, and that the verdict is the result of passion and prejudice.

In *Krieger v. McLaughlin*, 50 Wn. (2d) 461, 313 P. (2d) 361 (1957), we stated:

"In argument to the jury, counsel is permitted a very wide sweep and is not confined to the very precise bounds which limit the court's instructions. Indeed, this court has said a reasonable latitude must be allowed counsel in arguing the case to his jury.   . . ."

The remark of counsel regarding the reputation of jurors is entirely improper and transcends the bounds of legitimate argument. However, we do not feel that the remark would clearly have engendered such a feeling of prejudice in the minds of the jurors as to prevent the college from receiving a fair trial. The verdict was not excessive, and there was no evidence that the college was prejudiced by this comment.

The judgment of the trial court is affirmed.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.